## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## AT LONDON

**CIVIL ACTION NO. 10-243-DLB**

**LARRY GREGORY**                                                                                  **PLAINTIFF**

**VS.**                                    **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

\* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, **reverses and remands** the Commissioner's decision for further consideration consistent with this opinion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Larry Gregory applied for a period of disability and disability insurance benefits (DIB) on May 19, 2005, alleging a disability onset date of February 11, 2005 due to heart disease. (Tr. 15, 50). At the time of filing, Plaintiff was 45 years old. (Tr. 15). His application was denied initially and again on reconsideration. (*Id.*). At Plaintiff's request, an administrative hearing was conducted on May 19, 2006. (*Id.*). On June 13, 2006, Administrative Law Judge (ALJ) Frank Letchworth ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 22). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (Tr. 5).

1

Plaintiff filed an action in the United States District Court for the Eastern District of Kentucky to obtain judicial review of the unfavorable administrative decision.  On January 23, 2008, the Court concluded that the administrative decision must be reversed and remanded for further consideration.  (Tr. 328).  The case was again assigned to ALJ Letchworth on remand from the Appeals Council pursuant to the District Court's remand. (Tr. 313).

Plaintiff appeared and testified at an administrative hearing conducted on October 29, 2009 before ALJ Letchworth.  On January 24, 2010, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB.  (Tr. 359).  This decision became the final decision of the Commission when the Appeals Council denied Plaintiff's request for review on July 21, 2010.

On August 28, 2010, Plaintiff filed this action.  (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. # 11, 12).

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether the decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

2

Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date through the date he was last insured,

December 31, 2007. (Tr. 353).  At Step 2, the ALJ found that Plaintiff had the following severe impairments during that same time period: precocious coronary artery disease with mild to moderate peri-infarction ischemia; Type II diabetes mellitus (controlled); history of alcohol abuse; cigarette abuse against medical advice; and obesity.  (Tr. 353).  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that were severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 during the time period at issue.  (Tr. 354).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) between his alleged onset date through the date he was last insured.  (Tr. 354).  However, he required the flexibility to sit and stand at will with no prolonged or uninterrupted sitting or standing in excess of one-half hour.  (Tr. 354).  He was also precluded from exposure to extreme temperatures, unprotected heights, or moving equipment.  (Tr. 354).  Furthermore, he was precluded from tasks that required him to raise his right arm above his shoulder.  (Tr. 354). Based upon these findings, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured.  (Tr. 354).

At Step 5, the ALJ found that Plaintiff was born on July 17, 1960, was 44 years old at the time of his alleged disability onset, and was 47 years old on the date last insured, which is defined as a younger individual.  (Tr. 358).  *See* 20 C.F.R. § 404.1563.  The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English.  (Tr. 358).  Relying on the testimony of a vocational expert (VE) and considering Plaintiff's age, education, work experience and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could have performed

4

between his alleged onset date through the date he was last insured.  (Tr. 358).  ALJ Letchworth therefore concluded that Plaintiff was not under a disability within the meaning of the Social Security Act during the relevant time period.  (Tr. 358).

### C.   Analysis

Plaintiff has failed to comply with General Order 09-13 issued by the Chief Judge of the Eastern District of Kentucky, which requires plaintiffs to "include a statement of the legal arguments presented at the beginning of the motion . . . in a numbered list."  While the Court may deny Plaintiff's motion based on this failure alone, the Court has attempted to discern Plaintiff's arguments from the entirety of his memorandum.  This has been a difficult task because Plaintiff's memorandum is disorganized and fails to clearly articulate any individualized arguments.[1]

Plaintiff raises seven arguments on appeal.  First, the ALJ found Plaintiff had several severe impairments, which Plaintiff argues he experienced for more than twelve months, thus meeting the definition of "disability" as defined at 42 U.S.C. § 423(d)(1)(A).  Second, the ALJ erred in finding that Plaintiff did not meet a listed impairment.  Third, the ALJ failed to consider the cumulative effect of Plaintiff's obesity on his cardiovascular impairment.  Fourth, the ALJ erred in finding that Plaintiff had the RFC to perform light work with some limitations because Plaintiff's sit/stand option precluded even a finding that Plaintiff had the RFC to perform sedentary work.  Fifth, the ALJ erred in finding that Plaintiff had at least a highschool education.  Sixth, the ALJ improperly ignored the opinion of

---

[1]  More specifically, Plaintiff's brief was woefully deficient in that it primarily consisted of rambling without distinct arguments.  Despite the flaws in Plaintiff's brief, because the ALJ failed to consider the combined effect of Plaintiff's obesity on his cardiovascular impairment, remand is warranted.  Plaintiff's counsel is cautioned to be more precise in her arguments the next time she files a Social Security appeal.

Plaintiff's treating physician.  Seventh, the ALJ "underestimates the challenges it takes in quitting smoking."  (Doc. # 11, at 11).

### 1.   The ALJ Failed to Properly Consider the Cumulative Effect of Obesity on Plaintiff's Other Impairments

Plaintiff makes a perfunctory argument that the ALJ failed to consider the combined effect of Plaintiff's obesity on his cardiovascular impairment.  Upon the Court's own review of the ALJ's decision and case law, the Court concludes that the ALJ failed to properly consider Plaintiff's obesity in compliance with Social Security Ruling 02-1p, 2002 WL 3468621.  Therefore, this case is reversed and remanded to the Commissioner for further consideration.

Although obesity no longer constitutes a listed impairment, the combined effects of obesity on musculoskeletal, respiratory, and cardiovascular listings must still be considered.  SSR 02-1p, at *1.  In fact, the combined effects of obesity must be considered in determining whether (1) the claimant has a medically determinable impairment(s), (2) whether the claimant's impairments are severe, (3) whether the claimant's impairments meet or medically equal a listing, and (4) whether the claimant's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant number in the national economy.  *Id.* at 3.  While SSR 02-1p does not offer "any particular procedural mode of analysis" for the ALJ's consideration of obesity, *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006), it offers guidance as to how obesity should be considered at each step of the sequential analysis.  For example, at Step 3, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  SSR 02-1p, at *5.  Additionally, at

6

Step 4, "[a]n assessment should be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id*. at *6. Most importantly, the ALJ must "explain how [he or she] reached [the] conclusion on whether obesity caused any physical or mental limitations." *Id*. at *7.

The ALJ did mention Plaintiff's obesity several times in his opinion. For instance, at Step 2, the ALJ concluded that Plaintiff's severe impairments included obesity. (Tr. 353). At Step 4, the ALJ stated that Plaintiff weighed 242 pounds and maintained a body mass index (BMI) above 34. (Tr. 355-357). The ALJ also found that doctors recommended to Plaintiff that he lose weight through proper dieting and exercise, but that Plaintiff failed to follow those recommendations. However, the ALJ's passing references to Plaintiff's obesity did not sufficiently "explain how [the ALJ] reached [his] conclusion on whether obesity caused any physical or mental limitations," as the ALJ is required to do by SSR 02-1.

After Step 2, where the ALJ found that Plaintiff's severe impairments included obesity, the ALJ's opinion is devoid of any indication that the ALJ ever considered the effects of Plaintiff's obesity. At Step 3, it does not appear that the ALJ considered Plaintiff's obesity when he determined whether Plaintiff met or medically equaled a listed impairment, particularly for cardiovascular impairments. The ALJ simply stated that he "reviewed the Code of Federal Regulations with respect to musculoskeletal, cardiovascular, and endocrine impairment, but does not find [Plaintiff's] limitations meet or equal criteria set forth in the medical listings." (Tr. 354). This statement gives no indication that the ALJ considered the combined effects of Plaintiff's obesity on any of the listed impairments.

7

Moreover, it is not clear whether the ALJ considered the combined effects of Plaintiff's obesity and his cardiovascular impairment in making an RFC determination.  The ALJ did mention Plaintiff's weight and BMI at Step 4, but failed to explain whether Plaintiff's weight affected his ability to work.  Although Plaintiff's obesity may have been considered when the ALJ discussed Plaintiff's diabetes and the results of Plaintiff's treadmill stress test, this is not sufficient to "explain how [the ALJ] reached [his] conclusion on whether obesity caused any physical or mental limitations."  *See* SSR 02-1, at *7.  Consequently, the ALJ's opinion fails to adequately  comply with SSR 02-1p and is, thus,  reversed and remanded for further consideration.  *See Wilson v. Astrue*, No. 11-8-DLB, 2011 WL 4479032, at *3-4 (E.D. Ky. Sept. 26, 2011) (reversing and remanding because ALJ failed to consider how plaintiff's obesity, alone or in combination, would effect plaintiff's ability to conduct light work); *See also Maddex v. Astrue*, No. 3:10-cv-159, 2011 WL 1990588, at *11-13 (S.D. Ohio May 2, 2011) (ALJ's decision was reversed and remanded because the ALJ failed to discuss Plaintiff's obesity at Step 3 when determining whether Plaintiff's impairment or combination of impairments met or medically equaled a listing and failed to discuss Plaintiff's obesity at Step 4 when determining Plaintiff's RFC); *cf. Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (holding that  ALJ properly considered the effect of plaintiff's obesity on his ability to conduct sedentary work because ALJ discussed the plaintiff's obesity throughout findings of fact, and ALJ used RFCs from physicians who explicitly considered plaintiff's obesity).

Having concluded that remand is warranted to require the ALJ to consider the combined effect of Plaintiff's obesity on his cardiovascular impairment, the Court will not consider whether the ALJ erred in determining Plaintiff's RFC.  However, Plaintiff's other

arguments will be considered at this time, as they are not dependent on the Commissioner's conclusions regarding Plaintiff's obesity.

### 2. The Mere Existence of a Severe Impairment for Twelve Months Does Not Necessitate a Finding of Disability

Plaintiff appears to argue that the ALJ's findings at Step 2 of the sequential analysis necessitated a finding of disability.  At Step 2, the ALJ concluded that Plaintiff suffered from multiple severe impairments.  Although Plaintiff's argument is unclear, he seems to assert that because the ALJ found that he suffered from multiple severe impairments, the ALJ was required to find that Plaintiff was under a disability as defined by the Social Security Act (Act).  However, Plaintiff's argument fails to understand both  the definition of "disability" as defined by the Act and the five-step sequential analysis that the ALJ undertakes to determine whether the claimant is under a disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[2]  This definition has three distinct parts.  First, the individual must not be able to engage in *any* substantial gainful activity.  *Id.*  Second, the individual must be limited by a medically determinable physical or mental impairment.  *Id.*  Third, the impairment must be expected to result in death or continue for a period not less than twelve months.  *Id.*  Plaintiff's argument fails to consider that the individual must be unable to engage in any

---

[2]  The Act also includes a separate definition of "disability" for individuals who have attained the age of 55 and are blind.  42 U.S.C. § 423(d)(1)(B).

substantial gainful activity.  At Step 2, the ALJ stated that the Plaintiff's "impairments result in significant limitations of the ability to perform work activity."  (Tr. 353).  Plaintiff suggests that this statement means that the ALJ concluded that Plaintiff was unable to perform any substantial gainful activity, rendering him disabled within the meaning of the Social Security Act.  However, this is a misinterpretation and misapplication of the ALJ's statement.  The ALJ only stated that Plaintiff was *limited* in his ability to perform work activity, not that he was unable to perform *all* substantial gainful activity.

Furthermore, Plaintiff's reliance on the ALJ's findings at Step 2 is misguided.  In determining disability, the ALJ undertakes a five-step sequential analysis as described above.  20 C.F.R. § 404.1520(a).  At Step 2 of the analysis, the regulations require the ALJ to find that the claimant's impairments are not severe unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).  The purpose of this step is to enable the Commissioner to screen out "totally groundless claims."  *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  At Step 3, the ALJ determines whether the claimants condition is severe enough to meet a listing; if it does, a finding of disability is warranted.  20 C.F.R. § 404.1520(a)(4)(iii).  At Steps 4 and 5, the ALJ determines whether the claimant is capable of performing any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(v).  If not, the claimant is determined to be disabled.  In short, once the ALJ finds that the claimant's condition is severe enough to proceed past Step 2, the ALJ must make an additional finding before concluding that the claimant is disabled.  Here, ALJ Letchworth concluded at Step 2 that Plaintiff suffered from multiple severe impairments, but without making additional findings, the ALJ's conclusion at Step

10

2 does not warrant a finding of "disability."

### 3.    Plaintiff Failed to Show That He Meets a Listing

Plaintiff further argues that the ALJ should have found his impairments severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  On remand, the Commissioner must consider Plaintiff's obesity in determining whether Plaintiff's impairments meet or medically equal a listing.  However, to the extent that Plaintiff claims he meets the "listing" in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00(A)(1)(b)(I), his argument has no merit.

Plaintiff asserts that he has "chronic heart failure which meets the listed impairment" of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00(A)(1)(b)(I).  This section is not a "listing" contemplated by 20 C.F.R. § 404.1520(a)(4)(iii).  Instead, the section that Plaintiff has cited is a general introduction to cardiovascular impairments.  Thus, Plaintiff has failed to identify which listing(s) his impairments allegedly meet.

If Plaintiff were to have properly identified a listing for cardiovascular impairment, he would have identified one found in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 4.02 - 4.12.  The specific listing for chronic heart failure, as Plaintiff claims he has, is found in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02.  In order to meet the listing, a claimant must show that the chronic heart failure is severe enough to meet the requirements in both § 4.02(A) and § 4.02(B).  However, Plaintiff fails to argue that he meets this listing generally and also fails to show how he meets the requirements of paragraphs A and B within the listing.  As a result, Plaintiff's argument has no merit to the extent that he argues

he meets the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.00(A)(1)(b)(I).[3]

Not only has Plaintiff failed to direct the Court's attention to which listing(s) his impairments allegedly meet or medically equal, Plaintiff has also failed to offer any supporting medical evidence that his impairments meet any listing. "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727 (6th Cir. 2004). Without citing any medical evidence to show that he meets a listing, Plaintiff has failed to meet this burden.

The only evidence that Plaintiff has offered to prove he meets a listing cannot be considered on appeal. Plaintiff quotes an article on coronary artery disease and attaches it to his memorandum. The author and publisher of the article are not identified. Even more problematic, the article is not part of the administrative record. The Court is "confined to review evidence that was available to the Secretary ... to determine whether the decision of the Secretary is supported by substantial evidence." *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Thus, this article will not be considered.

### 4.   The ALJ Properly Considered Plaintiff's Education Level Despite Stating that Plaintiff "Has At Least a High School Education"

Plaintiff states that "the ALJ [found he] has at least a high school education. Although Plaintiff has a GED, this is not the same as a high school education . . . ."

---

[3] In reaching this conclusion, the Court does not hold that the ALJ's finding at Step 3 is supported by substantial evidence. Instead, on remand the ALJ must consider whether Plaintiff's impairments met or medically equal a listed impairment, giving due consideration to the combined effects of Plaintiff's obesity on his other impairments.

Plaintiff makes no argument in support of this conclusory statement, nor does he cite any law that would give the Court some indication as to what his argument might be. If Plaintiff is attempting to argue that the ALJ erred in concluding that Plaintiff had a high school education when determining Plaintiff's vocational ability, his argument has no merit.

Although it appears to be a generally accepted principle that a GED is the equivalent of a high school education, the Court need not make any finding in this regard. Instead, the Court finds that the ALJ properly considered Plaintiff's education level in determining Plaintiff's vocational ability. To determine a claimant's vocational ability, an ALJ may rely on the testimony of a VE in response to a hypothetical question so long as the hypothetical accurately portrays the claimant's condition and circumstances. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Here, the ALJ's hypothetical question posed to the VE accurately reflected Plaintiff's education level – he has a GED, not a highschool diploma. In describing Plaintiff's background to the VE, the ALJ asked, "GED, I believe, is your education level? Is that right, Mr. Gregory?" (Tr. 457). Plaintiff responded, "Yes, sir." (Tr. 457). Therefore, to the extent that Plaintiff is challenging the ALJ's vocational assessment because his education level was not properly considered, his challenge is unpersuasive.

### 5. The ALJ Appropriately Considered the Treating Physician's Opinion Evidence

Plaintiff states that "the ALJ ignored evidence of the treating physicians and of the administration's consultants and substitutes his own biased opinion. Dr. Chatterjee, [the treating physician], fully explained why he found Larry disabled with his detailed findings and long treatment." (Doc. # 11-1, at 11). While Plaintiff's argument is ambiguous, it

appears that Plaintiff is alleging that the ALJ improperly disregarded his treating physician's opinion that he was disabled.  Plaintiff cites to a Second Circuit decision for the proposition that the ALJ may not arbitrarily substitute his or her own opinion in place of a competent medical opinion offered by a treating physician.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  However, the Second Circuit's opinion specifically addresses whether the ALJ improperly disregarded the treating physician's opinion on the claimant's residual functional capacity.  *Id.*  It does not address whether the ALJ improperly disregarded the treating physician's ultimate conclusion that the claimant was disabled within the meaning of the Social Security Act.  *See id.*

"The medical opinions and diagnosis of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference . . . . This is true, however, only if the treating physician's opinion is based on sufficient medical data . . . . Ultimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician."  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). "A statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  20 C.F.R. § 404.1527(e)(1).  Additionally, if the treating physician opines that the claimant is disabled, his or her opinion is afforded no deference if it is contradicted and not based on convincing evidence.  *Harrington v. Sec'y of Health and Human Servs.*, No. 85-4069,1986 WL 18406, at *2 (6th Cir. Nov. 18, 1986).

Here, the ALJ appropriately disregarded Plaintiff's treating physician's opinion that Plaintiff was disabled.  Although the treating physician's opinion is normally afforded substantial deference, the ALJ properly stated that determining whether Plaintiff is disabled

14

requires a legal interpretation and analysis of the Social Security Act and is, therefore, the prerogative of the Secretary.  (Tr. 357).

Additionally, the ALJ rejected the treating physicians opinion as to the ultimate issue of Plaintiff's disability because it was contradicted by the medical evidence.  Objective metrics of Plaintiff's heart function show that his ejection fraction measured between 35 and 45 percent during the time period at issue, which the medical expert (ME) appropriately described as "reduced from normal, but not, not at listing-level severity."[4]  (Tr. 433).  Results from a treadmill stress test indicated that Plaintiff had a "normal exercise tolerance," as described by the ME.  (Tr. 434).  Thus, the objective findings contradict the treating physician's opinion to the extent that he found Plaintiff "disabled," adding support to the ALJ's decision not to give weight to the treating physician's opinion.

In short, the Court holds that the ALJ did not improperly ignore the treating physician's opinion that Plaintiff was disabled.  That conclusion is reserved for the Commissioner; the treating physician's opinion on the matter is not to be given any special significance.  20 C.F.R. §§ 404.1527(e)(1) - (3).  Therefore, the ALJ did not err in failing to credit the treating physician's opinion on this issue.

### 6.    Plaintiff Fails to Make a Legal Argument Regarding His Smoking Habit

Plaintiff asserts that "the ALJ underestimates the challenges it takes in quitting smoking."  (Doc. # 11-1, at 11).   Plaintiff then provides a two-page summary of articles from the *American Council on Science and Health* and *Time.com* in support of his

---

[4]  To prove listing-level severity for systolic chronic heart failure, the claimant's ejection fraction must be 30 percent or less during a period of stability or the claimant must have left ventricular end diastolic dimensions greater than 6.0 cm.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02(A)(1).

15

"argument." However, Plaintiff never cites to law, evidence in the record, or the ALJ's opinion in crafting this argument. In fact, Plaintiff fails to offer any explanation as to how the ALJ underestimates the challenges associated with quitting smoking. Beyond merely summarizing these articles, Plaintiff fails to demonstrate how the articles apply to his own condition. Having provided no argument or analysis, the Court will not attempt to formulate arguments on Plaintiff's behalf. *Hollon ex rel. Hollon v. Commr. of Soc. Sec.*, 447 F.3d, 477, 491 (6th Cir. 2006). Furthermore, without citing to any portion of the administrative record, the Court refuses to undertake an open-ended review of the entirety of the record in search of some possible error on the part of the ALJ. *Id.* Therefore, Plaintiff's unsupported argument, or lack thereof, concerning his smoking habit will not be considered.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, the Court concludes that this case must be remanded so that the ALJ may consider the combined effect of Plaintiff's obesity on his cardiovascular impairment at all stages of the five-step sequential analysis.

**IT IS ORDERED** as follows:

1.   Plaintiff's motion for summary judgment (Doc. # 11) be, and it hereby is, **GRANTED IN PART** as to Plaintiff's request for a reversal of the Commissioner's decision, and **DENIED IN PART** as to his request for a court ordered award of benefits;

2.   Defendant's motion for summary judgment (Doc. # 12) be, and it hereby is, **DENIED;** and

16

3.      This action be, and it is, hereby **REMANDED** to the Commissioner under

sentence four of 42 U.S.C. § 405(g) with instructions to consider the

combined effect of Plaintiff's obesity on his cardiovascular impairment.

This 3rd day of November, 2011.



**Signed By:**

**_David L. Bunning_**

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\London\6-10-243-GregoryMOO.wpd

17